## SUPREME COURT.

HENRY Z. PERSON, appellant agt. WM. H. CIVER, respondent.

Where the defendant received the plaintiff's property under an agreement to return it at a certain time or to pay to plaintiff a certain sum for its value, and subsequent to the time limited for its return the defendant paid to plaintiff a part of the stipulated value, and gave his due bills for the balance, and on the defendant's refusal to return the property on demand of the plaintiff subsequently made (having in fact been sold by defendant), or to pay the due bills, *held,* that the defendant was liable in an action for the *conversion* of the property, and was properly *held to bail* therein.

The original *contract* was not one of *sale,* but of *bailment,* and the subsequent payment and giving of the due bills by the defendant did not affect the right of the plaintiff to maintain his action for conversion. (DANIELS, J. *dissented. See his opinion at special term,* 28 *How.* 139, *which decision is here reversed.*)

*Erie General Term, September,* 1865.

*Before* MARVIN, GROVER *and* DANIELS, *Justices.*

APPEAL from order vacating order of arrest (*Reported at Special Term,* 28 *How. Pr. R.* 139). The action is tort, for converting an instrument called an engineer's transit. The order of arrest was made upon the affidavit of the plaintiff, in which he stated that sometime in October, 1854, at

Civer's request, he loaned to him the " transit," and that Civer was to return the same to him in the spring of 1855, or pay him the value thereof. It is then stated that Civer neither paid for or returned the property, but converted it to his own use. Civer in his affidavit, upon which motion to vacate the order of arrest was made, says, in substance, that he owned the transit and some other property, and that in September, 1854, being indebted to the plaintiff in about the sum of $190, he delivered to him the property as security for the payment of the debt, and that soon after he *obtained* from the plaintiff the transit and then went west, and in the summer of 1857 sent to the plaintiff $50, the receipt of which the plaintiff acknowledged; that in October, 1863, the plaintiff having sold the other property, made up a statement of the amount still owing to him, and he, Civer, gave a promissory note therefor, amounting to $60 or $65.

The plaintiff made an affidavit which was used in opposition to the motion, in which he states an absolute purchase of the transit and other property from the defendant, in payment of the debt owing to him. He states that afterwards the defendant applied to him for the loan of the transit until the following spring, promising to return the same then to the plaintiff or to pay him the value thereof in money, and that he loaned the transit to him on such terms. That defendant soon after left the state and remained away until 1863. He states that he received the $50 from the defendant in 1857 ; that he had sold the other property for $32.50 ; that in October, 1863, he saw the defendant and demanded of him the transit, and was informed by defendant that he had sold it and could not return it. The plaintiff demanded pay for the transit, and the defendant alleged inability to pay, and claimed that the plaintiff should only demand a sum sufficient to pay the old debt, amounting to $81; that the defendant then made and delivered to him two due bills, one for $45, and

the other $36.  Copies of these notes are given.  They were to be paid with use, and were due.  He states that no United States revenue stamps were used, and that nothing was said about stamps; that he would, however, have accepted the sums named in the due bills in satisfaction, &c., for the transit, at any time prior to April 18, 1864, when the defendant wrote to him in substance that he did not intend to pay, and then this action was commenced.  He then stated that he never sold the transit to the defendant, or authorized him to sell it, or affirmed the sale, or made any bargain other than as before stated; that he did not accept or receive the due bills in settlement or payment of his claim against the defendant, nor had he given him any credit, or in any way waived the tort committed by the defendant in selling the transit and converting it to his own use.

P. G. PARKER, *for plaintiff.*
W. B. McMASTERS, *for defendant.*

MARVIN, J.  According to the statement of the plaintiff, the " transit " was loaned to the defendant to use for a definite time, when it was to be returned to the plaintiff or its value paid by the defendant.  It was loaned to the defendant to use upon such terms.  The defendant did not return the property at the time specified, nor did he pay its value.

In whom was the property in the mean time ?  Was the agreement between the parties a sale of the transit on condition, called sometimes a " contract of sale or return ?" (*See* 1 *Parsons on Con.* 450.)  A sale of goods is the exchange thereof for money, or more precisely, it is the transfer of the property in goods from a seller to a buyer, for a price paid or to be paid in money.  And all that is necessary to constitute the sale at common law, is the agreement of competent parties that the property in the

subject matter shall pass from the seller to the buyer for a fixed price (*Par. Mer. L.* 41, 42). The author adds : "The sale is made when the agreement is made. The completion of the sale does not depend upon the delivery of the goods by the seller, nor upon the payment of the price by the buyer. By the mutual assent of the parties to the terms of the sale, the buyer acquires at once the property and all the rights and liabilities of property, so that in case of loss or depreciation of the articles purchased, the buyer will be the sufferer, as he will be the gainer by any increase in their value."

Conditions may be annexed to sales, and the law in some cases will imply conditions. In every sale, unless otherwise expressed, there is an implied condition that the price shall be paid before the buyer has a right to possession, and this is a condition precedent (1 *Par. on Con.* 448). The property in the thing sold, and the possession or right to possession, are distinct and different things. In a completed sale the property in the thing sold passes to the purchaser; one of these things implies the other ; if the property passes then it is a completed sale, and if a completed sale then the property passes (1 *Par. on Con.* 440). These rules apply to conditional sales ; that is, the property in the thing passes by a conditional sale, though the sale may be defeated or avoided sometimes by the non-performance of the condition. (*See* 1 *Par. on Con.* 448, *et seq.* ; *Par. on Mer. L.* 55.) Hence in sales on condition that the buyer may return the property within a fixed or reasonable time, the property in the goods passes to the purchaser, and if he fails to return the goods the sale becomes absolute, and the price of the goods may be recovered in an action for goods sold and delivered (1 *Par. on Con.* 450), and see also the cases cited in the opinion of the learned justice at special term in this case (*reported in* 28 *How.* 139), among them *Moss* agt. *Sweet* (3 *Eng. L. & Eq. R.* 371), in which the sale of the goods was with the option of return

ing them, and not being returned, the action was for goods
sold and delivered. Reference is also made to a note at
the end of the case referring to some cases in this country,
as analogous to the contract of "sale or return" in
England. They are cases where manufacturers deliver
large quantities of their goods to retailers, who upon set-
tlement pay for what they sell, with the privilege of return-
ing the remainder. In such cases it is said that the pro-
perty does not become the retailer's, and cannot be attached
by his creditors. The person so receiving the property is
regarded as a factor or agent for the other party. Then
follows the case of *Dearbon* agt. *Turner* (16 *Maine R.* 17),
holding that ordinarily, in the absence of the relation of
principal and agent, if the owner delivers his goods to
another and takes his promise to return the same on a day
specified, or pay a sum of money therefor, the property in
the chattel passes to the latter at the time of delivery, and
he may sell the same, and pass the property as against the
former owner, even before the time specified for its return
has elapsed. This case is, perhaps, more nearly like the
case under consideration than any other. But I understand
from it simply this, that when goods are delivered to a
person upon his promise to return them or pay for them,
and the relation of principal and agent does not exist
between the parties, the court will hold the facts as consti-
tuting a conditional sale; that is, that the party to whom
the goods were delivered actually purchased them upon the
condition expressed. Parties may by agreement, make a
condition precedent to the vesting of the property, and in
such cases the property will not vest until the condition is
performed. They may agree expressly that the property
shall remain the property of the seller until the happening
of the event specified, or they may insert any other valid
condition to be performed before the vesting of the pro-
perty (*Blackburn on Con. of Sale*, 167). These agreements
are sometimes classed with agreements of sale. They are

agreements to sell on a condition precedent, but they are not actually sales, though they may, by the performance of the precedent condition become actual sales. Until the condition be performed the purchaser has no interest in the thing itself, and the owner may sell it to another, rendering himself liable to the first purchaser for a breach of his executory agreement. In *Mires* agt. *Salesby* (2 *Mod.* 243, *cited in Black. on Con. of Sale*, 168), the owner of sheep agreed with A that he should take and pasture the sheep an agreed time for an agreed price, and if at the end of the time A would pay a certain price for the sheep, he should have them. Before the time expired the owner sold the sheep to Mires, and it was held that he acquired the property in the sheep, and that there was no sale to A. See also *Neidig* agt. *Eiler* (18 *Abb. Pr. R.* 353), a bailment with a contract to sell at the end of the bailment, upon the payment of certain sums in the meantime. It was held that there was no sale.

In the case under consideration, did the agreement upon which the transit was delivered amount to a sale? Did the property vest in the defendant? There was certainly no present purchase. It was delivered upon a contract of loan for use for a certain time, and to be then returned or paid for. It was a bailment of the "transit" for a certain time, to be used by the borrower, without paying for the use. (2 *Kent's Com.* 573, 3d ed.; *Story on Bail.* § 219, *et seq.*) The bailee was bound by law to return the specific thing, and his agreeing to do so did not increase his legal liability. But it is supposed that his promise expressed to return it or *pay for* it, changed the character of the agreement into a conditional sale. It seems to me that this is not the proper construction to place upon the acts of the parties. I repeat there was no express agreement to purchase, nor any express agreement to sell upon any terms, and I think none should be implied from the facts. The express agreement was a loan for use—a bail-

ment.   The express promise to return or *pay* for the chattel, may have made the defendant an insurer against all accidents to the thing loaned, whereas without such undertaking he would not be liable for all accidents or injuries (*Story on Bail.* § 240, *et seq*).   The parties to a bailment may, by contract, modify their common law liabilities.   The obligations of the borrower may be less or more, as the parties shall agree (*Story on Bail.* §§ 238, 252).   If the borrower undertakes for all perils, he will become chargeable for any loss caused by his engagement, although he would not be otherwise chargeable.   The defendant undertook to return the transit borrowed or pay its value; he thus assumed all perils.   The contract was not one of sale. This construction gives effect to all the terms of the agreement.   It·is, I submit, reasonable and practicable, and in accordance with the rule that effect must be given to every part of an agreement if reasonably practicable.   (*See Westcott* agt. *Thompson*, 18 *N. Y. R.* 366.)

If we consult the defendant's affidavit, we shall come to the same result.   He does not claim that he made any purchase whatever.   His position is that he *delivered* the transit and some other property to the plaintiff as security for the payment of a debt owing by him to the plaintiff; and that he afterwards *obtained* the transit from the plaintiff and went west, and some three years thereafter remitted to the plaintiff $50, on account, I suppose he claims, of the debt.   He does not deny that he converted the property by selling it.   I apprehend that these facts would make him a *tort feasor*.   But he claims that a settlement was effected in October, 1863, after he returned to this state, and that he gave his promissory note.   He in fact gave two unstamped notes.   But I shall not stop to consider the consequences arising from the omission to place revenue stamps upon the notes, and the refusal of the defendant to pay them.   The defendant had previously converted the transit.   Did the taking of the notes affect the right of the

plaintiff to maintain this action? There was no accord and satisfaction, and there was certainly no merger of the right of action for the conversion. If the defendant had paid the notes, there would have been an accord and satisfaction. (*See Jacob's L. Dict. "Accord;" Bouv. L. D. "Accord," C. W.* 390, *and cases cited.*) The receipt of the $50 remitted from the west in 1857, was perhaps some evidence tending to prove a sale, but all the other evidence in the case is to the contrary, and we should not be justified, from this fact, in finding a sale or an agreement to sell. The payment of this $50 should undoubtedly go in mitigation of damages.

In any view which I am able to take of the facts, it seems to me that the order of arrest should not have been vacated. If it should not appear upon the trial that the defendant was guilty of a conversion of the property, or if it should appear that he was not liable in this form of action, the verdict will be in his favor, his bail will be discharged, and he will not be liable to imprisonment (*Frost* agt. *McCarger*, 14 *How. Pr. R.* 131).

The order appealed from should be reversed, and the order of arrest affirmed.

GROVER, J., concurred.

DANIELS, J., dissented.